GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA   94111
Telephone:  (415) 217-6810

Attorneys for Plaintiff

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LINDA PHILION, MELANIE FARLEY, ANDREA GIALANELLA, and CHRIS GIALANELLA on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HEBEI WELCOME PHARMACEUTICAL CO. LTD., JIANGSU JIANGSHAN PHARMACEUTICAL CO. LTD., NORTHEAST PHARMACEUTICAL GROUP CO. LTD., WEISHENG PHARMACEUTICAL CO. LTD., SHIJIAZHUANG PHARMACEUTICAL (USA) INC., SHIJIAZHUANG PHARMACEUTICAL GROUP CO. LTD., and CHINA PHARMACEUTICAL GROUP, LTD.,<br><br>Defendants. | Case No.: C 05-4524 SI<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

1    Plaintiffs Linda Philion, Melanie Farley, Andrea Gialanella, and Chris Gialanella

2    (hereinafter "Plaintiffs"), on behalf of themselves and as representatives of a class of similarly-

3    situated indirect purchasers in California of Vitamin C, demanding a trial by jury, complain

4    upon information and belief with respect to all allegations and allege as follows:

5                        **JURISDICTION AND VENUE**

6         1.    This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. §§ 15 and

7    26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. It is

8    also brought pursuant to the Cartwright Act (Cal. Bus. & Prof. Code § 16720 *et seq.*) and the

9    Unfair Competition Law ("UCL")(Cal. Bus. & Prof. Code § 17200 *et seq.*) to recover damages

10   and the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all

11   others similarly situated sustained as a result of Defendants' violations of these laws.

12        2.    The Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and

13   1337.  The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those

14   claims are so related to the federal claim that they form part of the same case or controversy.

15        3.    Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391

16   because Defendants reside, transact business, or are found within this District, and a substantial

17   part of the events giving rise to the claims arose in this District.

18        4.    The activities of the Defendants and their co-conspirators, as described herein,

19   were within the flow of, were intended to, and did have a substantial effect on the foreign and

20   interstate commerce of the United States.

21                             **DEFINITIONS**

22        5.    The term "Class Period" means the time period from December 1, 2001 up to and

23   including February 7, 2005.

24                            **THE PARTIES**

25        6.    Plaintiff Linda Philion is a person residing in the State of California.  During the

26   Class Period, Plaintiff Philion indirectly purchased Vitamin C from one or more of the

27   Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

28        7.    Plaintiff Melanie Farley is a person residing in the State of California.  During the

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

Class Period, Plaintiff Farley indirectly purchased Vitamin C from one or more of the Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

8.     Plaintiff Andrea Gialanella is a person residing in the State of California.  During the Class Period, Plaintiff Andrea Gialanella indirectly purchased Vitamin C from one or more of the Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

9.     Plaintiff Chris Gialanella is a person residing in the State of California.  During the Class Period, Plaintiff Chris Gialanella indirectly purchased Vitamin C from one or more of the Defendants and has been injured by reason of the antitrust violations alleged in this Complaint.

10.     Defendant Hebei Welcome Pharmaceutical Co. Ltd. ("Hebei Welcome") is a Chinese corporation with operations in the Hebei province of China.  Hebei Welcome is a joint venture between North China Pharmaceutical Holding Co. Ltd., Hong Kong Sanwei Intl. Co. Ltd. and Hong Jinxian Co. Ltd.  Hebei Welcome maintains offices in California at 815 W. Naomi Ave., Arcadia, California.

11.     Defendant Jiangsu Jiangshan Pharmaceutical Co. Ltd. ("Jiangsu Jiangshan") is a Chinese corporation based in the Jiangsu province of China.  Jiangsu Jiangshan was founded in 1990 as a joint venture between Jiangsu Glucose Factory Zhonsgshan Co. (H.K.), Jioansu Provincial Medicine & Health Product Import and Export Co. and Expert Assets Ltd.

12.     Defendant Northeast Pharmaceutical Group Co. Ltd. ("Northeast Pharmaceutical") is a Chinese corporation based in the Liaoning province of China.  Northeast Pharmaceutical is the largest pharmaceutical enterprise in China.  It has produced Vitamin C since the early 1990's.  In 2003, Northeast Pharmaceutical registered a total export value of $100 million for its Vitamin C products.

13.     Defendant Weisheng Pharmaceutical Co. Ltd. ("Weisheng") is a Chinese corporation based in the Hebei province of China.  Weisheng is an affiliate of the major pharmaceutical corporation China Pharmaceutical Group Ltd.

14.     Defendant Shijiazhuang Pharmaceutical (USA) Inc. ("Shijiazhuang") is a Chinese

3

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1  corporation based in the Hebei province of China.  Shijiazhuang is an affiliate of Weisheng and

2  the major pharmaceutical corporation China Pharmaceutical Group Ltd.  Shijiazhuang is

3  registered to do business in California at 5460 N. Peck Road, Suite A, Arcadia, California.

4       15.    Defendant Shijiazhuang Pharmaceutical Group Co. Ltd. is a Chinese corporation

5  located at 276 Zhongshan (West) Road, Shijiazhuang City, Hebei Province, China 050051.

6       16.    Defendant China Pharmaceutical Group, Ltd. ("China Pharmaceutical") is a Hong

7  Kong corporation based in the Hebei province of China.  China Pharmaceutical was renamed

8  from its former corporate name China Pharmaceutical Enterprise and Investment Corporation

9  Ltd. on May 7, 2003.  China Pharmaceutical owns, controls and dominates its affiliates

10  Weisheng and Shijiazhuang and through these affiliates is engaged in the business of

11  manufacturing and selling Vitamin C.  Collectively, Weisheng, Shijiazhuang and China

12  Pharmaceutical are referred to hereinafter as China Pharmaceutical.

13       17.    Each of these Defendants, directly and through affiliates that they dominate and

14  control in this country and outside the United States, is engaged in the business of manufacturing

15  and selling Vitamin C in the United States and throughout the world.

16       18.    Various others, presently unknown to Plaintiffs, participated as co-conspirators

17  with the Defendants in the violations of law alleged in this Complaint and have engaged in

18  conduct and made statements in furtherance thereof.

19       19.    The acts charged in this Complaint have been done by Defendants and their

20  co-conspirators, or were authorized, ordered or done by their respective officers, agents,

21  employees or representatives while actively engaged in the management of each Defendant's

22  business or affairs.

23       20.    Each of the Defendants named herein acted as the agent or joint venturer of or for

24  the other Defendants with respect to the acts, violations and common course of conduct alleged

25  herein.  Each Defendant that is a subsidiary of a foreign parent acts as the sole United States

26  agent for Vitamin C made by its parent company.

27

28

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

## CLASS ACTION ALLEGATIONS

21.     Pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure,

Plaintiffs bring:

        (a)    the First Cause of Action on behalf of themselves and the following class

                for injunctive relief:

> All persons in the United States who indirectly purchased Vitamin C from any of the Defendants at any time during the period from December 1, 2001, up to and including February 7, 2005. Excluded from the Class are governmental entities, any judge, justice or judicial officer presiding over this matter and the members of his or her immediate family, the Defendants and other manufacturers of Vitamin C, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity. ("National Class")

        (b)    the Second and Third Causes of Action on behalf of themselves and the

                following class:

> All persons in the State of California who indirectly purchased Vitamin C from any of the Defendants at any time during the period from December 1, 2001, up to and including February 7, 2005. Excluded from the Class are governmental entities, any judge, justice or judicial officer presiding over this matter and the members of his or her immediate family, the Defendants and other manufacturers of Vitamin C, along with their respective parents, subsidiaries and/or affiliates. Also excluded from this class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity. ("California Class")

22.     This action has been brought and may be properly maintained as a class action

pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

        a.    Both the National and California Class are ascertainable, and there is a

              well-defined community of interest among the respective members of both

              Classes.

        b.    Based upon the nature of the trade and commerce involved and the

              number of indirect purchasers of Vitamin C, Plaintiffs believe that class

              members in the National Class and the California Class number in the

              thousands, and therefore are sufficiently numerous that joinder of all Class

5

members in both the National and the California Class is not practicable.

c. Plaintiffs' claims are typical of the claims of the members of the National Class and the California Class because Plaintiffs indirectly purchased Vitamin C from one or more of the Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the National and the California Class' claims and the relief Plaintiffs seeks is common to both classes.

d. The following common questions of law or fact, among others, exist as to the members of the National Class:

i.    whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, Vitamin C;

ii.   whether the combination or conspiracy caused Vitamin C prices to be higher than they would have been in the absence of Defendants' conduct;

iii.  the operative time period of Defendants' combination or conspiracy;

iv.   whether Defendants' conduct caused injury to the business or property of Plaintiffs and the members of the Class;

v.    whether Defendants' conduct violates Section 1 of the Sherman Act; and

vi.   the appropriate nature of class-wide equitable relief.

e. The following common questions of law or fact, among others, exist as to the members of the California Class:

i.    whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, Vitamin C;

ii.   whether the combination or conspiracy caused Vitamin C prices to

6

1   be higher than they would have been in the absence of Defendants'

2   conduct;

3   iii.   the operative time period of Defendants' combination or

4   conspiracy;

5   iv.   whether Defendants' conduct caused injury to the business or

6   property of Plaintiffs and the members of the Class;

7   v.   the appropriate measure of the amount of damages suffered by the

8   Class;

9   vii.   whether Defendants' conduct violates Sections 16720 and 17200 of

10   the California Business and Professions Code; and

11   viii.   the appropriate nature of class-wide equitable relief.

12   f.   These and other questions of law or fact which are common to the

13   members of the National and California Class predominate over any

14   questions affecting only individual members of the Class.

15   g.   After determination of the predominate common issues identified above, if

16   necessary or appropriate, the Classes can be further divided into logical

17   and manageable subclasses: for example, subclasses consisting of all

18   members of the Class who purchased Vitamin C for purposes of resale and

19   all members of the Class who purchased Vitamin C for their own use and

20   not for resale.

21   h.   Plaintiffs will fairly and adequately protect the interests of each Class in

22   that Plaintiffs have no interests that are antagonistic to other members of

23   the Class and have retained counsel competent and experienced in the

24   prosecution of class actions and antitrust litigation to represent themselves

25   and each Class.

26   i.   A class action is superior to other available methods for the fair and

27   efficient adjudication of this litigation because individual joinder of all

28   damaged members of each Class is impractical.  The damages suffered by

7

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1        individual Class members are relatively small, given the expense and

2        burden of individual prosecution of the claims asserted in this litigation.

3        Thus, absent the availability of class action procedures, it would not be

4        feasible for members of either Class to redress the wrongs done to them.

5        Even if the Class members could afford individual litigation, the court

6        system could not.  Further, individual litigation presents the potential for

7        inconsistent or contradictory judgments and would greatly magnify the

8        delay and expense to all parties and to the court system.  Therefore, the

9        class action device presents far fewer case management difficulties and

10        will provide the benefits of unitary adjudication, economy of scale and

11        comprehensive supervision by a single court.

12      j.    Defendants have acted, and refused to act, on grounds generally applicable

13        to the Class, thereby making appropriate final injunctive relief with

14        respect to the Class as a whole.

15      k.    In the absence of a class action, Defendants would be unjustly enriched

16        because they would be able to retain the benefits and fruits of their

17        wrongful conduct.

18          **NATURE OF TRADE AND COMMERCE**

19   23.    Vitamin C (also known as ascorbic acid) is a water-soluble vitamin.  Vitamin C

20 plays an important role in the biosynthesis of collagen in skin and of connective tissue, bones

21 and teeth.  It is thought to enhance the functioning of the immune system by acting as an

22 antioxidant.

23   24.    The manufacture of Vitamin C is a multi-million-dollar a year industry

24 worldwide.  The United States market for Vitamin C exceeds $100 million per year.

25   25.    Defendants are manufacturers of raw vitamins for bulk sales to customers.

26 Defendants sell Vitamin C to food and pharmaceutical distributors and manufacturers in the

27 United States for human consumption.  The vitamins manufactured by Defendants are commonly

28 used in the United States as an ingredient in food and beverage products and the production of

8

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1  vitamins packaged for consumer use under major brand names.

2      26.    Defendants also sell Vitamin C to manufacturers and users of animal and animal

3  nutrition products. The bulk vitamin products manufactured by Defendants are used as an

4  ingredient in animal nutrition products and animal feed premixes.

5      27.    The conduct of Defendants and their co-conspirators has directly, substantially

6  and foreseeably restrained such trade and commerce in United States and California.

7                          **FACTUAL BACKGROUND**

8      28.    In the early 1990s, the worldwide Vitamin C market was dominated by European

9  and Japanese manufacturers.  During 1990 to 1995, these companies engaged in a combination

10  and conspiracy to suppress competition and fix prices for Vitamin C.

11      29.    Through the end of the 1990s, the reduction in Vitamin C prices and other factors

12  resulted in an industry consolidation in China to four major manufacturers- the four

13  manufacturer defendants in this case, Hebei Welcome, Jiangsu Jiangshan, Northeast

14  Pharmaceutical, and Weisheng (the "defendant manufacturers").

15      **A. Violations of Antitrust Laws**

16      30.    Beginning December 2001, Defendants and their co-conspirators formed a cartel

17  to control prices and the volume of exports for Vitamin C.  At a meeting of the Western

18  Medicine Department of the Association of Importers and Exporters of Medicines and Health

19  Products of China (the "Association") in December 2001, Defendants and the Association

20  successfully reached an autonomy agreement for Chinese manufacturers of Vitamin C in which

21  they agreed to control export quantities and achieve stable and enhanced price goals.  The cartel

22  members agreed to restrict their exports of Vitamin C in order to create a shortage of supply in

23  the international market.  The cartel members agreed to "restrict quantity to safegaurd prices,

24  export in a balanced and orderly manner and adjust dynamically."  The agreements of the cartel

25  members were facilitated by the efforts of their trade association.

26      31.    Defendants thus began their ongoing combination and conspiracy to suppress

27  competition by fixing the price and controlling export sale volumes of Vitamin C offered for sale

28  to customers of the United States and elsewhere.

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

32. The formation of the cartel in December 2001 resulted in price increases of Vitamin C in the United States from approximately $2.50 per kilogram in December 2001 to as high as $7 per kilogram during December 2002. Defendant China Pharmaceutical reported in its 2003 annual report that average prices during 2002 rose from $3.20 per kilogram to $5.90 per kilogram, an increase of 84 percent. China Pharmaceutical also reported gross profit margins for its Vitamin C production of 60.2 percent in 2002, an increase of 28.1 percent.

33. During the period of the charged combination and conspiracy, Defendants and their co-conspirators have participated in meetings and conversations in China and elsewhere in which the prices, volume of sales and exports to California and the United States, and markets for vitamins were discussed and agreed upon. These meetings have also been coordinated with trade association meetings for associations in which Defendants are members.

34. At the above-described meetings and during the period of conspiracy, Defendants and others agreed to and did eliminate, suppress, and limit competition, by:

      (a)      discussing the product volumes and prices of Vitamin C for export to California, the United States and elsewhere;

      (b)      agreeing to control the supply of Vitamin C for export to California the United States and elsewhere;

      (c)      agreeing to increase and maintain prices for Vitamin C for the sale of Vitamin C in California, the United States and elsewhere; and

      (d)      agreeing to control the worldwide market for Vitamin C.

35. During the period of the cartel, executives from the Defendants have also warned each other against the adverse effects of the past price wars in Vitamin C.

36. Defendants' illegal concerted conduct has been facilitated by their concentrated control over sales of Vitamin C. Together, Defendants' sales constitute approximately 60 percent of all Vitamin C sales in the world and virtually 100 percent of the manufacturers who can produce Vitamin C for a cost below $4.50 to $5 per kilogram.

37. Following the collusive price increases achieved in 2002, during 2003, the combination of supply restrictions by the cartel and unanticipated increases in world demand for

10

Vitamin C, attributable in part to the outbreak of SARS in the Spring and Summer of 2003, allowed the cartel to achieve remarkable price increases. Prices jumped to as high as $15 per kilogram in April 2003.

38. By approximately the third quarter of 2003, although prices remained at super-competitive levels, cartel members began opportunistically reducing prices to obtain increased sales in the enormously profitable market. Spikes in demand for Vitamin C increased the temptation among cartel members to undercut each other's prices in order to grab super-normal profits that still were substantially above competitive prices. Labeled a "price war" by the industry, the competition actually reflected price reductions at levels above collusively arranged prices.

39. To address the price cutting, the association called an "emergency meeting" in late November or December 2003, which was attended by representatives of each of the Defendants. The association discussed with Defendants at the meeting how they would rationalize the market and restrain and limit the production level of Vitamin C to increase prices.

40. In December 2003, Defendants and their representatives, together with members of the Association, also met at the annual China Exhibition of World Pharmaceutical Ingredients. At this exhibition, Defendants and the Association again met and devised plans to rationalize the market and to limit production levels and increase prices. The Association also warned Defendants that it was impossible for any of them to monopolize the market to the detriment of the others.

41. The emergency meeting called by the Association and other efforts by cartel members were successful. Prices for Vitamin C in December 2003 increased from a low of $4.20 per kilogram at the beginning of the month to over $9 per kilogram by the end of the month.

42. In June of 2004, in reaction to price reductions from their highs in December 2003, Defendants agreed to also shut down production for equipment maintenance. Defendants have also continued to agree on export volumes to the United States. These supply restrictions again have had the result of stabilizing prices.

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

43. Despite some price increases in 2004, the collusive arrangements of the cartel have continued to maintain prices well above those of a competitive market.

44. The cartel established by Defendants and their co-conspirators continues its illegal

conduct today.

45. Beginning at a date unknown to Plaintiffs, but at least as early as December 1, 2001, and continuing thereafter to and including February 7, 2005, Defendants engaged in a continuing trust, combination and conspiracy for the following purposes:

      (a) to create and carry out unreasonable restrictions on the free flow of the trade and commerce of Vitamin C described above;

      (b) to increase the price of Vitamin C;

      (c) to allocate the market for Vitamin C;

      (d) to prevent or restrain competition in the sale of Vitamin C; and

      (e) to fix the price of Vitamin C.

46. The aforesaid combination and conspiracy consisted of a continuing express or tacit combination, agreement, understanding, scheme and concert of action among the Defendants, of which the substantial terms were to fix, raise, maintain and stabilize the prices of Vitamin C sold in the State of California at supra-competitive levels.

47. For the purpose of forming and effectuating the aforesaid combination and conspiracy, the Defendants have done those things which they agreed and conspired to do, including, among other things:

      (a) participating in conversations and meetings to discuss the prices of Vitamin C sold in California;

      (b) agreeing, during those conversations and meetings, to charge prices at certain levels and otherwise to increase and maintain prices of Vitamin C sold in California; and

      (c) issuing price announcements and price quotations in accordance with the

12

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1    agreements reached.

2       48.    In formulating and effectuating the trust, combination and conspiracy, the

3 Defendants have committed acts that they combined and contracted to do as part of an illegal

4 price-fixing scheme, including, but not limited to, the following:

5         (a)    discussing, exchanging and deciding among themselves the prices and

6              other terms of sale for Vitamin C in San Francisco and elsewhere in the

7              State of California;

8         (b)    agreeing to raise, stabilize and maintain the prices of Vitamin C in San

9              Francisco and elsewhere in the State of California;

10        (c)    agreeing to charge certain prices for Vitamin C in San Francisco and

11             elsewhere in the State of California; and

12        (d)    receiving and accepting payments from customers for Vitamin C sold at

13             agreed upon prices in San Francisco and elsewhere in the State of

14             California.

15       49.    Beginning at a date unknown to Plaintiffs, but at least as early as December 1,

16 2001 and continuing up to and including February 7, 2005, the Defendants have continued to

17 discuss and agree upon prices of Vitamin C sold in the State of California.  The combination and

18 conspiracy alleged herein was created and effectuated through secret communications among

19 representatives of the Defendants.  Each Defendant engaged in one or more overt acts in

20 furtherance of the combination and conspiracy, and each engaged in and attended conspiratorial

21 conversations and/or meetings.

22       50.    The aforesaid combination and conspiracy has had the following effects, among

23 others:

24        (a)    buyers of Vitamin C from the Defendants were deprived of free and open

25             competition in the purchase of Vitamin C;

26        (b)    competition in the sale of Vitamin C among the Defendants was

27             restrained, suppressed and eliminated; and

28        (c)    prices of Vitamin C sold by the Defendants were raised, fixed and

13

1    maintained at artificial and noncompetitive levels.

2    51.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs

3    and members of the class have been injured in their business and property in that they paid more

4    for Vitamin C than they would have paid absent Defendants' unlawful conduct.

5    **FIRST CAUSE OF ACTION**
     **Violation of 15 U.S.C. § 1**
6    **[The Sherman Act]**

7    52.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

8    allegation set forth in the preceding paragraphs of this Complaint.

9    53.    Beginning at a time presently unknown to Plaintiffs, but at least as early as

10   December 1, 2001, and continuing through February 7, 2005, the exact dates being unknown to

11   Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement,

12   understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or

13   stabilize prices for Vitamin C in the United States, in violation of Section 1 of the Sherman Act,

14   15 U.S.C. § 1.

15   54.    In formulating and carrying out the alleged agreement, understanding, and

16   conspiracy, the Defendants and their co-conspirators did those things that they combined and

17   conspired to do, including but not limited to the acts, practices, and course of conduct set forth

18   above, and the following, among others:

19        a.    To fix, raise, maintain and stabilize the price of Vitamin C;

20        b.    To allocate markets for Vitamin C among themselves;

21        c.    To submit rigged bids for the award and performance of certain Vitamin C

22        contracts; and

23        d.    To allocate among themselves the production of Vitamin C.

24   55.    The combination and conspiracy alleged herein has had the following effects,

25   among others:

26        a.    Price competition in the sale of Vitamin C has been restrained, suppressed,

27        and/or eliminated in the United States;

28        b.    Prices for Vitamin C sold by Defendants and their co-conspirators have

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.    Those who purchased Vitamin C directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

56.    Plaintiffs have been injured in their business and property by paying more for Vitamin C purchased indirectly from the Defendants and their co-conspirators than they would have paid in the absence of the combination and conspiracy, including paying more for other products in which Vitamin C is a component as a result of higher prices paid for Vitamin C by the manufacturers of those products.

57.    Plaintiffs and the class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

**SECOND CAUSE OF ACTION**
**Violation Of California Business & Professions Code §16720 *Et Seq.***
**[The Cartwright Act]**

58.    Plaintiffs re-allege and incorporate each and every allegation set forth in the paragraphs above.

59.    Beginning at least as early as December 1, 2001, the exact date being unknown to Plaintiffs, and continuing up to and including February 7, 2005, the Defendants have engaged in a continuing contract, combination, conspiracy and course of conduct to fix prices of Vitamin C in violation of California Business & Professions Code section 16720 *et seq.*

60.    The contract, combination, conspiracy and course of conduct alleged herein consisted of a continuing agreement, understanding, and concert of action among the Defendants,  of which the substantial terms were to raise, fix, and maintain prices of Vitamin C throughout the United States, including the State of California.

61.    For the purpose of forming and carrying out the alleged combination and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to meeting to discuss and agree upon future price increases, and other activities designed to implement the illegal price-fixing conspiracy.

15

62.     During the Class Period, Plaintiffs and the other members of the class indirectly purchased Vitamin C from the Defendants.  By reason of the violations of California's antitrust laws alleged herein, Plaintiffs and the other members of the class paid more for Vitamin C than they would have in the absence of the Defendants' illegal contract, combination, and conspiracy. As a result, Plaintiffs and the members of the class have been injured and have suffered damages in an amount presently undetermined.

**THIRD CAUSE OF ACTION**
**Violation Of California Business & Professions Code §17200 *Et Seq.***
**[The Unfair Competition Law]**

63.     Plaintiffs re-alleges and incorporate each and every allegation set forth in the paragraphs above.

64.     Section 17200 of the California Business & Professions Code prohibits unfair competition by prohibiting any "unlawful, unfair or fraudulent business acts or practice . . . ."

65.     This Complaint is filed and these proceedings are instituted pursuant to sections 17203 and 17204 of the California Business and Professions Code, to obtain relief from the Defendants for business acts and practices, as alleged herein, that violate the Unfair Competition Law.  Except as specifically provided herein to the contrary, the alleged violations of the Unfair Competition Law charged herein are distinct and independent of the alleged violations of the Cartwright Law.

66.     The Defendants' conduct as alleged herein violates the Unfair Competition Law. The business acts and practices of Defendants, as alleged herein, constituted and constitute a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of the Unfair Competition Law including, but in no way limited to, the following:

     a.     the violations of Business and Professions Code section 16720 *et seq.*, set forth above, are unlawful;

     b.     Defendants' business acts and practices, as described above, whether or not in violation of Business and Professions Code section 16720 *et seq.*, and whether or not the product of concerted action are otherwise unfair,

16

1    unconscionable, unlawful and fraudulent;

2         c.    Defendants' business acts and practices are unfair to consumers in the

3               State of California within the meaning of Business and Professions Code

4               section 17200; and

5         d.    Defendants' acts and practices are fraudulent within the meaning of

6               Business and Professions Code section 17200.

7    67.    The illegal conduct alleged herein is continuing and there is no indication that

8    Defendants will cease such activity into the future.

9    68.    The business acts and practices of Defendants, as alleged herein, constituted and

10   constitute a common continuous and continuing plan and scheme to deceive the public by means

11   of unfair, unlawful and/or fraudulent business practices, affecting the trade or commerce in

12   Vitamin C in violation of California Business & Professions Code section 17200 *et seq.*

13   69.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures,

14   as alleged herein, constituted and constitute unfair, unlawful and/or fraudulent business practices

15   within the meaning of California Business & Professions Code section 17200 *et seq.*

16   70.    Plaintiffs and the members of the class are entitled to relief, including full

17   restitution of all revenues, earnings, profits, compensation and benefits that may have been

18   obtained by Defendants as a result of such business acts or practices and an injunction enjoining

19   Defendants to cease and desist from engaging in the practices described herein.

20                              **PRAYER FOR RELIEF**

21         WHEREFORE, Plaintiffs, on behalf of themselves and the members of the National and

22   California Class, pray for judgment against the Defendants, jointly and severally, as follows:

23   1.    That the Court certify a National Class and a California Class of indirect

24   purchasers of Vitamin C manufactured and sold by Defendants.

25   2.    On the First Cause of Action:

26         a.    That the unlawful trust, combination, agreement and course of conduct

27               alleged herein be adjudged and decreed to be in violation of Section 1 of

28               the Sherman Act, and that Plaintiffs and the members of the National

17

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1    Class have been injured and damaged as a result of said violation; and

2    b.    That Defendants be enjoined from the unlawful trust, combination,

3    agreement and course of conduct alleged herein that is in violation of the

4    Sherman Act.

5    3.    On the Second Cause of Action:

6    a.    That the unlawful trust, combination, agreement and course of conduct

7    alleged herein be adjudged and decreed to be in violation of California

8    Business & Professions Code section 16720 *et seq.*(Cartwright Act), and

9    that Plaintiffs and the members of the class have been injured and

10    damaged as a result of said violation of the Cartwright Act;

11    b.    That Plaintiffs and the other members of the California Class recover

12    treble the amount of the damages sustained by each of them by reason of

13    the violations of California Business & Professions Code section 16720 *et*

14    *seq.*; and

15    c.    For reasonable attorneys' fees pursuant to section 16750(a) of the

16    Business

17    & Professions Code.

18    4.    On the Third Cause of Action:

19    a.    A declaration that Defendants have engaged in unlawful, unfair, and

20    deceptive business acts and practices in violation of California Business &

21    Professions Code §17200 *et seq.*;

22    b.    That Defendants, their agents, servants, and employees, and all persons

23    acting, directly or indirectly, in concert with them, be ordered to restore all

24    funds to each member of the California Class acquired by means of any

25    act or practice declared by this Court to be unlawful or to constitute unfair

26    competition under section 17200 *et seq.* of the California Business &

27    Professions Code; and

28    c.    That Defendants be ordered to make restitution to Plaintiffs and each and

18

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1    every member of the California Class due to their unfair competition

2    pursuant to California Business & Professions Code sections 17203 and

3    17204;

4    5.    For prejudgment interest at the highest legal rate.

5    6.    For reasonable attorneys' fees and costs of suit.

6    7.    For such other and further relief as the Court may deem just and proper.

7                          **JURY TRIAL DEMAND**

8    Plaintiffs hereby demand a trial by jury for all issues so triable.

9

Dated: November 23, 2005.                    /s/ Guido Saveri
10                                           GUIDO SAVERI (No. 22349)
                                             R. ALEXANDER SAVERI (No.173102)
11                                           GEOFFREY C. RUSHING (No. 126910)
                                             CADIO ZIRPOLI (No. 179108)
12                                           SAVERI & SAVERI, INC.
                                             111 Pine Street, Suite 1700
13                                           San Francisco, CA 94111
                                             Telephone:  (415) 217-6810
14
                                             RANDY R. RENICK (No. 179652)
15                                           LAW OFFICES OF RANDY R. RENICK
                                             128 North Fair Oaks Avenue, Suite 204
16                                           Pasadena, CA 91103
                                             Telephone:  (626) 585-9600
17
                                             *Attorneys for Plaintiff Linda Philion*
18
                                             SUSAN G. KUPFER (141724)
19                                           GLANCY BINKOW & GOLDBERG LLP
                                             455 Market Street, Suite 1810
20                                           San Francisco, CA  94105
                                             Telephone:      (415) 972-8160
21                                           Facsimile:      (415) 972-8166

22                                           LIONEL Z. GLANCY
                                             PETER A. BINKOW
23                                           MICHAEL GOLDBERG
                                             GLANCY BINKOW & GOLDBERG LLP
24                                           1801 Avenue of the Stars, Suite 311
                                             Los Angeles, CA 90067
25                                           Telephone:      (310) 201-9150
                                             Facsimile:      (310) 201-9160
26
                                             BRIAN BARRY
27                                           JILL LEVINE
                                             LAW OFFICES OF BRIAN BARRY
28                                           1801 Avenue of the Stars, Suite 307

                                   19

Los Angeles, CA 90067
Telephone:      (310) 788-0831
Facsimile:      (310) 788-0841

*Attorneys for Plaintiffs Andrea Gialanella
and Chris Gialanella*

MICHAEL P. LEHMANN (77152)
CHRISTOPHER L. LEBSOCK (184546)
THE FURTH FIRM LLP
225 Bush Street, 15th Floor
San Francisco, CA 94104
Telephone:      (415) 433-2070
Facsimile:      (415) 982-2076

SHANNON P. CEREGHINO
CHRISTINE G. PEDIGO
FINKELSTEIN, THOMPSON &
LOUGHRAN
601 Montgomery Street, Suite 665
San Francisco, CA 94111
Telephone:      (415) 398-8700

*Attorneys for Plaintiff Melanie Farley*

20

1

**CERTIFICATE OF SERVICE**

2    I, Mary McGuire, declare under penalty of perjury that the foregoing is true and correct:

3  I am over the age of 18 years and not a party to the above-entitled cause.  I am employed in the

4  County of San Francisco; my business address is One Eleven Pine Street, Suite 1700, San

5  Francisco, California 94111.

6    On November 23, 2005, I caused to be served a true and correct copy of the following

7  document(s):

8    **FIRST AMENDED COMPLAINT**

9  by transmission to the Electronic Case Filing System for the Northern District of California for

10  service on all counsel of record by electronic service pursuant to Order of the Court.

11    On November 23. 2005, I caused to be served a true and correct copy of the following

12  document(s):

13    **FIRST AMENDED COMPLAINT**

14  on the interested parties in this action by placing a true and correct copy thereof enclosed in a

15  sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco,

16  California, addressed as follows:

17  Randy Renick
    LAW OFFICES OF RANDY R. RENICK
18  128 North Fair Oaks Avenue, Suite 204
    Pasadena, CA  91103
19
    *Attorneys for Plaintiff Linda Philion*
20
    Michael P. Lehmann
21  THE FURTH FIRM LLP
    225 Bush Street, 15th Floor
22  San Francisco, CA 94104

23  Shannon P. Cereghino
    FINKELSTEIN, THOMPSON & LOUGHRAN
24  601 Montgomery Street, Suite 665
    San Francisco, CA 94111
25
    *Attorneys for Plaintiff Melanie Farley*
26
    Lionel Z. Glancy
27  GLANCY BINKOW & GOLDBERG LLP
    1801 Avenue of the Stars, Suite 311
28  Los Angeles, CA 90067

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1   Susan Kupfer
    GLANCY BINKOW & GOLDBERG LLP
2   455 Market Street, Suite 1810
    San Francisco, CA 94105
3
    Brian Barry
4   Jill Levine
    LAW OFFICES OF BRIAN BARRY
5   1801 Avenue of the Stars, Suite 307
    Los Angeles, CA 90067
6
    *Attorneys for Plaintiffs Andrea Gialanella and Chris Gialanella*
7
    Daniel Mason
8   ZELLE HOFMANN VOELBEL MASON & GETTE
    44 Montgomery Street, Suite 3400
9   San Francisco, CA 94104

10  *Attorney for Defendant Shijiazhuang Pharmaceutical (USA) Inc.*

11  James D. Bailey
    COUDERT BROTHERS LLP
12  1114 Avenue of the Americas
    New York, NY 10036
13
    Charles H. Critchlow
14  BAKER & MCKENZIE
    805 Third Avenue
15  New York, NY 10022

16  *Attorney for Defendant Hebei Welcome Pharmaceutical Co. Ltd.*

17  Frank E. Merideth, Jr.
    GREENBERG TRAURIG, LLP
18  2450 Colorado Ave., Suite 400E
    Santa Monica, CA 90404
19
    *Attorneys for Northeast Pharmaceutical Group Co., Ltd.*
20
    Steven V. Bomse
21  HELLER EHRMAN, LLP
    33 Bush Street
22  San Francisco, CA 94104

23  Richard S. Goldstein
    HELLER EHRMAN, LLP
24  7 Times Square Tower
    New York, NY10036
25
    *Attorneys for Jiangsu Jiangshan Pharmaceutical Co., Ltd.*
26

27          I am readily familiar with this firm's business practice for collection and processing of

28  correspondence for mailing with the United States Postal Service.  I caused such sealed envelope

                                                22

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI

1  with postage thereon fully prepaid to be placed in the United States mail the same day as this

2  certification at San Francisco, California in the ordinary course of business.

3          I declare under penalty of perjury under the laws of the State of California that the

4  forgoing is true and correct.

5          Executed in San Francisco, California this 23rd day of November, 2005.

6

7                                        _____/s/ Mary McGuire_____

8                                        Mary McGuire

9

10

11  vitc.044

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT; Case No. C 05-4524 SI